Maria De Robbio *vs.* Joseph De Robbio.

JULY 2, 1940.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

See, also, 61 R. I. 208.

Baker, J. This is an appeal by the respondent from a decree of the superior court setting aside two decrees, one interlocutory and the other final, entered in a divorce case in which the present parties were reversed. The decree now before us was entered following a hearing on an original petition filed in that court by the petitioner herein seeking the relief granted in such decree.

The controlling question in the cause at bar is essentially one of fact. Such question, under the petition and the evidence, is as follows: Did the respondent by false representations and conduct willfully and intentionally induce the petitioner, who innocently relied upon such representations

and conduct, to refrain from answering and defending a divorce petition which the respondent had brought against her, with the result that the respondent induced the superior court to enter, first, an interlocutory decree, and then a final decree in what was apparently an uncontested divorce petition?

The following facts are undisputed. The parties were married on June 26, 1926 and have two children. On October 27, 1936, the respondent filed a petition for an absolute divorce on the grounds of extreme cruelty and gross misbehavior, the citation in that case being served on the petitioner herein on October 29, 1936. That petition was heard by the superior court on oral testimony, being uncontested, on December 28, 1936, and a decision was rendered in favor of the husband, who also was awarded custody of the two children. An interlocutory decree was accordingly entered on December 29, 1936 and a final decree of divorce on July 1, 1937. While the proceeding above referred to was pending the parties lived with their children in the same home with no apparent change of relations between them, and they continued so to live until November 11, 1937 when, according to the wife, she first learned that her husband had secured a final decree in the divorce case. Shortly thereafter she brought the present petition.

She testified that when the citation in the divorce case was served upon her in October 1936 she confronted her husband with that fact and asked for an explanation. Her testimony in this connection was: "When he (the husband) came home at night I says to him, 'What is the idea of this?' He says, 'I had to start it because I am in kind of a jam but forget all about it because it is not going through'." Relying upon this statement made by her husband, she, according to her testimony, dismissed the divorce proceeding from her mind.

She further testified that thereafter she continued to look out for her home and children as she had always done; that she also did outside work whenever she could find employment; and that her relations with her husband were not only friendly but intimate until November 11, 1937, when she first learned of the alleged fraud that he had practiced on her in connection with the divorce case. Her testimony as to what occured on the date last mentioned is as follows: As her husband was leaving the house that evening she said to him: " 'What, are you going to another meeting tonight?' He says, 'It is none of your business', he says, 'but I am going out with a girl and am going to marry her in January because I got a divorce from you.' I says, 'Divorce?' I said. 'Don't come into this house again.' "

The respondent admits that in October 1936 his wife asked him what was the meaning of the divorce citation which had just been served upon her. The pertinent part of his testimony on this point follows: "When I came home that night she said, 'I got that present from you.' I asked her what she meant and she showed me the paper. She said I had an awful nerve accusing her of gross misbehavior because she thought, from what she talked, that gross misbehavior meant adultery. So I explained to her I did not accuse her of that. So I explained to her what gross misbehavior meant. I said, 'I caught you going out with other men and told you to stop. You told me to go ahead and get a divorce and that is what I did.' That is all that was said that night." He further testified that at this time he was in some "business trouble", but denied that he told his wife that he brought the divorce petition because he was in a jam, and that the divorce case would not go through.

The respondent does not deny that he continued to live with his family from October 1936 to November 11, 1937, and that during all this time his wife attended to the household duties, although, according to his testimony, she knew

that he was getting a divorce from her. He testified, however, that their relations were not intimate since before he brought the divorce petition, and that after instituting those proceedings he allowed her to remain in his home for more than a year because whenever he requested her to leave she asked him "to let her stay there until she could turn around."

He further testified that on December 30, 1936, the petitioner showed him a newspaper report of the interlocutory decree which had been entered in the divorce case, and that "she started to raise Cain and told me she was going to see about that. She didn't like the idea of me getting the custody of the children." He admitted that his wife was not represented by an attorney in the divorce proceedings in any way.

Margaret T. Mullins, a witness for the husband, testified that about the end of June 1937, the petitioner told her: " 'Margaret, you know I am divorced from Joe. . . . I would like to get the custody of the two children . . . and you working for the State I thought you might know a State lawyer.' " The witness then suggested that the petitioner consult either the Legal Aid Society or Judge DePasquale. The petitioner admitted making the above statement in substance to Miss Mullins, but testified that it was in November 1937, after she had discovered the alleged fraud that her husband had practiced upon her. Judge DePasquale, who is of counsel for the petitioner in the instant cause, testified that she consulted him for the first time "about a week or ten days before she signed this petition to vacate the decree" in the divorce case.

In her testimony the petitioner denied that she had been guilty of any conduct which would be a proper ground for divorce. Her husband and two other witnesses thereupon testified at considerable length as to her alleged actions and behavior. As the merits of the divorce case are not before us, we express no opinion on that issue. We refer to it mere-

ly because the respondent complains that the trial justice, on his own motion, had certain testimony in the uncontested divorce case read to him from the official stenographic record in that proceeding.

The respondent herein claims that, in so doing, the trial justice in the instant cause acted in an appellate capacity to review a decision of another justice of the same court. It clearly appears, however, that the trial justice was not acting in any such capacity. He had the testimony in question read to him, according to the statement in his decision, "to see whether or not these same three witnesses who appeared before me testified in substance as they did before Mr. Justice Curran. And I did that so that I would have some indication of how to weigh the credibility of their testimony. That was my only purpose." We see no prejudice to the respondent in this action of the trial justice.

At the close of all the evidence he made two decisions, one of law and the other of fact. First, he entertained jurisdiction of the present petition on the authority of *Broduer* v. *Broduer*, 53 R. I. 450; and second, he decided that the respondent had deceived his wife respecting the divorce case in that he had "by his conduct lulled her into a sense of security, into the belief that he didn't mean what he said when he filed those papers", meaning the divorce petition, and that the petitioner had acted with promptness after learning the facts. The decree he then entered set aside the interlocutory decree and the final decree in the divorce proceeding brought by the husband on the ground that such decrees were procured by fraud practiced upon Maria De Robbio by Joseph De Robbio.

No question is raised as to the procedure followed by the petitioner in this cause. The situation here is the converse of that in *Broduer* v. *Broduer, supra.* In the instant cause the decrees in the divorce proceeding may be set aside and

vacated on the ground of fraud, because the fraud is alleged and shown to have been perpetrated as to an issue collateral to the issues within the divorce case itself. The respondent contends that the cause at bar is in the same category as the case of *Scolardi* v. *Scolardi*, 42 R. I. 456. We cannot agree with this contention. That case dealt with an entirely different form of procedure and involved no question of fraud. We are, therefore, of the opinion that the trial justice was correct in ruling that he had jurisdiction to hear and determine the present petition.

The only other question for our determination is whether the trial justice erred in his decision that, on the facts in evidence, the respondent was guilty of fraud toward the petitioner. The credibility of the witnesses, especially the immediate parties hereto, was an important consideration in the determination of the question whether or not the husband fraudulently and intentionally deceived his wife, and thus prevented her from contesting the divorce petition brought by him and having her rights passed upon. The trial justice, who had the advantage which we do not have of seeing and hearing the witnesses testify, found that the present petitioner did not have her day in court because of her reliance upon the above fraudulent representations of the respondent in connection with his divorce petition. The decision of the trial justice will afford the petitioner an opportunity to defend against such petition. From our examination of the evidence, we cannot say that this decision of the trial justice was clearly wrong.

For the reasons stated, the appeal of the respondent is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Luigi DePasquale, Arthur Falcone,* for petitioner.

*Frank H. Wildes,* for respondent.